IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS KURTZ,<br><br>Defendant. | CASE NO. 1:15-CR-107<br><br>HONORABLE JUDGE BLACK<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS FOR VIOLATIONS OF SPEEDY TRIAL RIGHTS |

**NOW** comes the Defendant, **NICHOLAS KURTZ**, by and through undersigned counsel, Friedman & Nemecek, L.L.C., and Rion, Rion & Rion, L.P.A., Inc. and hereby respectfully submits his reply to the Government's Omnibus Response to Defendant's Motions to Dismiss for Violations of Speedy Trial Rights. (ECF No. 68). As demonstrated, *infra*, Kurtz has sufficiently demonstrated a violation of his Sixth Amendment right to a speedy trial such that relief is warranted under clear Supreme Court precedent. *See, e.g., Barker v. Wingo*, 407 U.S. 514 (1972). Accordingly, the undersigned respectfully requests that this Honorable Court issue an Order dismissing all charges with prejudice forthwith.

## ARGUMENT

For more than 2,400 days, the Defendant, Nicholas Kurtz ("Kurtz"), has remained imprisoned, on lock down in his cell for twenty-three (23) hours per day, awaiting a "speedy trial" that has yet to be set. He has filed numerous Motions that have gone unanswered and without final adjudication. Contrary to the self-serving representations made within its Brief in Opposition, the Government has neglected to undertake any actions to try and remediate the issues, instead

allowing this case – and Kurtz – to toil in a state of limbo without any meaningful recourse. In fact, even though Kurtz's initial Motion to Dismiss was filed back in September of 2021, the Government still made no effort to preserve or effectuate Kurtz's right to a speedy trial until this Court's recent briefing Order, which itself was only issued after defense counsel was forced to take the extreme measure of filing a Petition for a Writ of Mandamus with the Sixth Circuit Court of Appeals. The resultant delay is unwarranted and serves to undermine the most fundamental principle in the United States of America – the presumption of innocence.

Criminal defendants possess a Sixth Amendment right to a speedy trial. *See* U.S. Const. amend. VI. In *Barker*, *supra*, the Supreme Court articulated four factors to evaluate in determining whether a Defendant's Sixth Amendment Speedy trial rights have been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. No one of these factors constitutes a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. As discussed more fully, *infra*, these factors all weigh heavily in Kurtz's favor.

**1.) Length of the Delay**

The first factor under the *Barker* analysis is "actually a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992). In *Doggett*, the Court begins by determining whether there is a delay that triggers a speedy trial analysis. *Id.* at 651-52. The length of the delay is measured from the date of the Indictment or the date of the arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987). The length of the delay is a threshold requirement – if the length of the delay is not "uncommonly long," then judicial examination ends. *Doggett*, 505 U.S. at 652. Importantly, the Supreme Court has

recognized that a delay approaching one (1) year is presumptively prejudicial and triggers application of the remaining three factors. *Doggett*, 505 U.S. at 652 n. 1. Once speedy trial analysis is triggered, the "court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* This Circuit has held that the "strength of th[e] presumption [of prejudice] grows as the length of that delay extends." *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997).

In the instant matter, Kurtz has suffered a delay of approximately seven (7) years from the date of his arrest/Indictment to the present. The Government does not dispute that this period meets the "uncommonly long" standard, (ECF No. 68: Omnibus Response, PageID 913), particularly given the uncomplicated nature of the underlying offenses. Therefore, the Court must examine the other three (3) *Barker* factors.

**2.) Reason(s) for the Delay**

The second *Barker* factor, the reason for the delay, recognizes that certain types of delays are not only acceptable, but vital to a fundamentally fair trial. Thus, the district court must consider whether the reasons for the extraordinary delay are of a sort that work for the good of the accused, or against him. The court must consider who is most at fault for the delay. *See Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017); *Barker*, 407 U.S. at 531 (stating that the government is responsible for explaining or justifying the reason for the delay.). "[T]he prosecutor and the court have an 'affirmative constitutional obligation' to try the defendant in a timely manner," and thus, the burden is on the prosecution to explain the cause of the pre-trial delay. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987), *quoting Atkins v. Michigan*, 644 F.3d 543, 547 (6th Cir. 1981).

In determining the basis for the delay, a court must weigh some reasons more heavily than others. For instance, governmental delays motivated by bad faith, harassment, or attempts to seek

3

a tactical advantage weigh heavily against the Government, while "more neutral" reasons such as negligence or overcrowded dockets weigh against the state less heavily. *United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003). The purpose of the inquiry is to determine "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651.

A protracted and inexcusable period of inactivity on the part of the district court may warrant dismissal with prejudice in some cases. *See United States v. Moss*, 217 F.3d 426 (6th Cir. 2000) (dismissing a defendant's indictment with prejudice where the district court neglected to rule on a suppression motion for over a year without explanation). Without a proper evaluation of the roles each party ***and*** the court played in causing the delay, a district court cannot adequately consider the second *Barker* factor. *Id.*, at 431.

The Sixth Circuit's decision in *Moss*, *supra*, provides pertinent guidance on the issues herein before the Court. Moss was arrested and charged with a single count of possession with intent to distribute cocaine in March of 1995. *Moss*, 217 F.3d at 429. In November of that year, Moss filed a Motion to Suppress evidence that had been seized by law enforcement during the course of their investigation. *Id*. The court set the matter for an evidentiary hearing on January 30, 1996, with trial to commence on March 18, 1996. *Id*.

The evidentiary hearing proceeded as scheduled in January of 1996. At the conclusion of the hearing, defense counsel asked the court to stay its ruling to allow the parties to file post-hearing briefs once the transcripts had been completed. *Id*. The court took counsel's request under advisement and issued a briefing schedule that required the defense and Government to file pleadings by February 29, 1996, and March 1, 1996, respectively. *Id*. Moss filed his post-hearing brief in compliance with the court's schedule; however, the Government failed to submit any supplemental pleadings. *Id*. The trial was adjourned several times while awaiting the court's

4

ruling on the Motion to Suppress. *Id*. After nearly a year elapsed without a decision from the court, Moss filed a Motion to Dismiss, alleging that his right to a speedy trial had been unjustifiably violated by the delay in bringing him to trial. *Id*. Within its response, the Government conceded that the speedy trial act had been violated; however, it nevertheless urged the court to dismiss the charged without prejudice. *Id*. The court granted the Government's request and ordered that the Indictment be dismissed without prejudice. *Id*.

Moss was subsequently re-indicted for the same offense. After he was found guilty at trial, Moss filed an appeal in the Sixth Circuit, arguing, *inter alia*, that the district court erred in denying his Motion to Dismiss for violating his right to a speedy trial. The Sixth Circuit agreed, finding that Moss had sufficiently demonstrated that he was entitled to relief under *Barker*, *supra*. In support of its decision, the Sixth Circuit found that the delay stemmed from the district court's failure to issue a ruling on Moss's Motion to Suppress despite having taken the matter under advisement for approximately ten (10) months – a fact that the district court seemed to ignore when it denied the Motion in the first instance:

> With respect to the facts and circumstances that led to the dismissal of the original indictment, the district court implied that Moss alone caused the delay. Instead of recognizing its own role in not issuing a ruling on Moss's motion to suppress—which had been taken under advisement for approximately 10 months—the court simply quoted from [an] unpublished opinion . . .: "Defendants who passively wait for the speedy trial clock to run have [a lesser right] to dismissal with prejudice than do defendants who unsuccessfully demand prompt attention." . . . . [T]he district court in this case failed to acknowledge that the reason for ten months of the delay was that the motion to suppress was under advisement. Nor did the Court acknowledge that under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(J), only thirty days are excludable from the speedy trial clock for a motion taken under advisement. Evidently, the court was aware that the motion was still under advisement, as the trial was adjourned a number of times for that reason. The court also failed to mention that the Government also had not alerted the court to the speedy trial clock.

(citations omitted) *Moss*, 217 F.3d at 431.

The Sixth Circuit found it significant that "[n]o evidence suggested that [the defendant] caused any delay from the time the motion was taken under advisement until the time he filed the motion to dismiss for violation of the Speedy Trial Act." *Id.* And, although acknowledging that Moss could have informed the district court of the delay, the Court noted that "a defendant has no duty to bring himself to trial and has no duty to bring any delay to the court's attention." *Id.*; *see also United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992); *Barker*, at 527.

In the case at bar, the period of delay – as set forth in Defendant's Motions to Dismiss, (ECF Nos. 64 and 66) – cannot fairly be attributed to Kurtz. Again, apart from the initial twenty-six (26) days that passed between the Indictment and the defense's formal Motion for Discovery, Kurtz's speedy trial claims are based on the period of time that lapsed beginning thirty (30) days[1] after all pleadings related to Defendant's Motion to Suppress had been filed (*i.e.*, September 6, 2020) and continuing through Defendant's second Motion to Dismiss (*i.e.*, September 3, 2021).

Taking this analysis a step further, in reference to the first, original Motion to Dismiss the Indictment, because the Court had received all of the pleadings and documents required to resolve the Motion when the transcripts were filed, the matter should be properly deemed "under advisement" as of August 20, 2018. Thereafter, thirty (30) additional days should be excluded from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(1)(H). As such, the speedy trial time would recommence on or about September 19, 2018.[2] At the conclusion of the hearing, the Court ordered that transcripts be made available, and declared that a decision would be issued.

---

[1] As previously acknowledged by the defense, the initial thirty (30) days – after all pleadings have been filed – are excluded from the speedy trial calculation while the matter is "under consideration." (ECF No. 67: Writ of Mandamus, PageID 19). Thereafter, the speedy trial clock begins to run regardless of whether a formal decision has been issued with respect to the pending Motions. *Id.*

[2] Because Kurtz's Motion to Suppress (ECF No. 22) was also pending at that time, the Speedy Trial clock continued to toll in accordance with 18 U.S.C. § 3161(h)(1)(D).

(Min. Entry, 8/9/18). The transcripts of the evidentiary hearing on Defendant's Motion to Dismiss (ECF No. 43) were filed on August 20, 2018. (ECF Nos. 52, 53). To date, no decision has been issued regarding Defendant's Motion to Dismiss the Forensic Report. (ECF No. 43). It has been over four years since those transcripts were filed, a decision was promised by this Court, and none was ever issued.

Furthermore, Kurtz asserted his right to a Speedy Trial in two (2) separate Motions to Dismiss in September of 2021 and March of 2022. When no ruling was issued or response filed, Kurtz was forced to file a Petition for a Writ of Mandamus in the Sixth Circuit Court of Appeals. (ECF No. 67: Writ of Mandamus). The Sixth Circuit has previously held that once a defendant moves for dismissal on speedy trial grounds, he cannot be blamed for any further delay. *See Maples v. Stegall*, 427 F.3d 1020, 1029 (6th Cir. 2005). And while "negligence and overcrowded dockets" do not weigh as heavily against the Government as evidence of bad faith, the Government must ultimately bear the responsibility for such circumstances. *See Barker*, 407 U.S. at 531; *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997) (finding that the district court and the Government bore primary responsibility for the delays stemming from the defendant's filing of certain pretrial motions; "[i]f the court had stepped in at any point in the eight-year delay, the motion would not have been pending for such an extended amount of time"). Thus, the 362-day period between September 6, 2020, and September 3, 2021, is properly attributable to the Government.

The Government's self-serving assertions – that it "prosecuted the case with reasonable diligence" and that the reasons for any delay are either neutral or attributable to Kurtz – are simply belied by the record in this case. (ECF No. 68: Omnibus Response, PageID 913). The record is replete of incidences in which the Government has willfully ignored deadlines and failed to file

7

responses. Likewise, the Government fails to acknowledge or otherwise explain its failure to reply to not one, but two, motions to dismiss for violation of speedy trial violations until directed to do so by the Court.

The Government's reliance on its prior advisement of the speedy trial calendar during the initial pretrial conference on October 16, 2015, is similarly misplaced. First, it should be noted that the Government does not cite to any precedent or other legal authority to support the contention that its obligations are limited to advising the court of the speedy trial calendar on one (1) occasion nearly seven (7) years ago, particularly when the Government knew that numerous Motions – including two (2) separate Motions to Dismiss for speedy trial violations – remained pending for months/years without response or adjudication. The Government was clearly aware not only of Kurtz's speedy trial claims, but also of its own obligations to respond to said pleadings, as evidenced by its request for additional time to respond to the initial Motion to Dismiss.[3] However, the Government failed to notify the Court of the violation of Kurtz's right to a speedy trial following the Court's receipt of all submissions related to Kurtz's Motion to Suppress. Respectfully, the Government cannot neglect to respond, remain silent on its duties, and then claim that it did not proceed in bad faith when the burden to track speedy trial and notify the Court of such is placed on the Government. *See Barker*, 407 U.S. at 531; *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997).

The undersigned is not suggesting that the Government is solely responsible for the delays at issue in this case.[4] Rather, counsel is simply acknowledging that such a determination is entirely

---

[3] Importantly, the Government did not respond to Kurtz's initial Motion to Dismiss for over one (1) year, which is well beyond the permissible time limitations established by Federal and Local Rules.
[4] Concomitantly, counsel submits that the Government's attempt to absolve itself of any responsibility or blame for the delays is untenable and ignores clearly established precedent from

8

irrelevant to the issue of whether Kurtz is entitled to relief. As aforementioned, the purpose of inquiring into the reasons for the delay is to determine "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651. Like the defendant in *Moss*, *supra*, Kurtz did not cause "any delay from the time the motion [to suppress] was taken under advisement until the time he filed the motion to dismiss for violation of the Speedy Trial Act." *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000). Accordingly, Kurtz is entitled to relief irrespective of whether – or to what extent – the delays are properly attributed to the Government and/or the Court.

### 3.) Kurtz's Assertion of His Speedy Trial Rights

A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "The more serious the deprivation, the more likely a defendant is to complain." *Id.*, at 531. When considering this factor, the Court is to look to "[t]he timeliness, vigor, and frequency" with which the defendant asserts the right as "probative indicators" of whether he was denied his right to a speedy trial. *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir. 1982) *citing Barker*, 407 U.S. at 528-29); *see also Maples*, 427 F.3d at 1030 ("[G]iven how vigorously Petitioner asserted his right, . . . this factor weighs strongly in Petitioner's favor."); *Brown v. Bobby*, 656 F.3d 325, 344-345 (6th Cir.2011) (weighing the third *Barker* factor in favor of the defendant when the record showed that the defendant had asserted his right to a speedy trial on three separate occasions). Additionally, the Sixth Circuit has recognized a request for bail as an assertion of a speedy trial right. *Redd v.*

---

this Circuit. *See, e.g., Moss*, 217 F.3d at 431 (recognizing that the Government bore the burden of informing the district court of the speedy trial issue); *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992) (finding that because there were 111 non-excludable days between the defendants' arraignment and the filing of their motion to dismiss the indictment, the court was required to dismiss the indictment under 18 U.S.C. § 3162(a)(2)); *Barker*, 407 U.S. at 527 (refusing to agree that a defendant who fails to demand a speedy trial waives his right).

*Sowders*, 809 F.2d 1266, 1271 (6th Cir. 1987) ("[A] request for reduction of bail is equivalent to a request for a speedy trial."); *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir. 1982).

Here, the record clearly establishes that Kurtz expressed his interest in a speedy trial on multiple occasions. On June 28, 2016, and again on March 6, 2020, Kurtz moved the Court for release on bond. (ECF Nos. 32 and 57). In each of those requests, Kurtz referenced the significant period of time that he had already been detained. These same issues were subsequently raised in Defendant's Motions to Dismiss, (ECF Nos. 64 and 66), as well as the Petition for a Writ of Mandamus. (ECF No. 67).

Regardless, the fact remains that it is the duty of the prosecution to bring a defendant to trial, and the failure of the defendant to demand the right is not to be construed as a waiver of the right. *Barker*, 407 U.S. at 528; *see also Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987) ("[T]he prosecutor and the court have an 'affirmative constitutional obligation' to try the defendant in a timely manner," and thus, the burden is on the prosecution to explain the cause of the pre-trial delay). It cannot be argued that Kurtz did not assert his right to a speedy trial. Because the Government has failed to offer any justification for the delay or other compelling reason as to why the charges should not be dismissed with prejudice, Kurtz is entitled to relief.

**4.) Prejudice**

The final factor to be analyzed is whether Kurtz suffered prejudice as a result of the unreasonable delay. As discussed more fully infra, Kurtz can establish both presumptive and actual prejudice caused by the delay of the instant proceedings, either of which is sufficient to warrant the relief herein requested.

   a. *Presumptive Prejudice*

The Sixth Circuit requires a defendant to demonstrate "substantial prejudice" in order obtain relief from a violation of the Speedy Trial Act. *United States v. White*, 985 F.2d 271, 276

(6th Cir. 1993). However, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States*, 505 U.S. 647, 655 (1992). In fact, impairment of the defense is infrequently susceptible of particularized proof because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Id.*, *quoting Barker*, 407 U.S. at 532. Given this fact, courts "generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter identify." *Doggett*, 505 U.S. at 655. Thus, "[w]here it is clear that the court and government were responsible for the extraordinary delay, and it is clear that the delay was caused by negligence rather than bad faith, prejudice can be presumed." *Id.* at 657. And, as noted *supra*, the strength of that presumption grows as the length of the delay extends. *Id.*

Presumption of prejudice is not automatically triggered, however, in every case in which there is a delay. *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). Instead, when the accused is unable to articulate the harm caused by the delay, the reason for the delay helps determine whether the delay was presumptively prejudicial. For example, where, as here, the delay was due to Government negligence,

> the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial . . . . [However,] to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice.

*See Doggett*, 505 U.S. at 657; *see also id.* at 655-56 ("[Presumptive prejudice] is part of the mix of relevant facts, and its importance increases with the length of the delay"). In *Doggett*, *supra*, the Court found sufficiently excessive a delay "six times as long as that generally sufficient to trigger judicial review." *Id.* at 658. In other cases, delays have been similarly long. *See, e.g., United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (8 years held presumptively

11

prejudicial); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (5 ½ years found to be presumptively prejudicial).

Kurtz has been incarcerated since 2015 – seven (7) times longer than the period of time necessary to trigger judicial review. Any delay that can be properly attributable to Kurtz is limited to the legitimate exercise of his constitutional rights (*e.g.*, discovery requests; Motion to Suppress; etc.). What's more, Kurtz cannot be imputed with any responsibility for the period of delay following the submission of all pleadings related to the Motion to Suppress and/or the subsequent filing of the Motions to Dismiss. *See Maples v. Stegall*, 427 F.3d 1020, 1029 (6th Cir. 2005) (holding that once defense counsel moved for dismissal on speedy trial grounds, the defendant could not be blamed for further delay).

b. *Actual Prejudice*

Even assuming, *arguendo*, that the Court declines to find the delay presumptively prejudicial, Kurtz is still entitled to relief insofar as he can demonstrate actual prejudice as a result of the unreasonable delay. To that end, the Supreme Court has identified three defense interests a court should consider when determining actual prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id*. *Cf. Doggett*, 505 U.S. at 659-62 (Thomas, J., dissenting) (noting contrary precedent stating that the *liberty* interests – and not the concern with impairment of the defense – are at the core of the speedy trial right).

In the matter *sub judice*, Kurtz has suffered all three (3) forms of prejudice identified in *Doggett*, *supra*. As to the first and second factors, Kurtz has been subjected to pretrial

12

incarceration for over seven (7) years, which has caused both him and his family anxiety and concern.[5] *See Doggett*, 505 U.S. at 654 (recognizing that delay fosters undue and prolonged anxiety and concern of the accused that is otherwise minimized through swift adjudication); *see also Dickey v. Florida*, 398 U.S. 30, 42 (1970) (Brennan, J., concurring) (observing that the speedy trial right is "intended to spare an accused those penalties and disabilities – incompatible with the presumption of innocence – that may spring from delay in the criminal process"); *State v. Green*, 140 Or. App. 308, 316 (Or. Ct. App. 1996) (reasoning that anxiety is prejudicial in the constitutional sense when the defendant is aware of the charge and, as a result, is forced to endure the anxiety and stigma of an unresolved public accusation for an unreasonable period of time); *United States v. Marion*, 404 U.S. 307, 320 (1971) (inordinate delay between public charge and trial may "seriously interfere with the defendant's liberty . . . and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and friends"). As the Wyoming Supreme Court aptly noted:

> the kinds of prejudice produced by long delays may be substantial even if the defendant's ability to defend himself is not impaired. The defendant's social relations, freedom of movement, and anxiety of public accusation are seriously affected when the delay is prolonged. These effects are precisely the kinds of prejudice that would be difficult for a defendant to demonstrate if he had the burden of proving prejudice.

*Berry v. State*, 93 P.3d 222, 237 (Wyo. 2004), *quoting Caton v. State*, 709 P.2d 1260, 1266 (Wyo. 1985).

---

[5] Kurtz's concern and anxiety is evidenced by the numerous requests for pretrial release and the filing of multiple Motions to Dismiss, (ECF Nos. 64 and 66), and a Petition for a Writ of Mandamus, (ECF No. 67), all of which were predicated on violations of his right to a speedy trial. *See Barker*, 407 U.S. at 531 ("The frequency with which the defendant asserts his speedy trial right is probative indication of the prejudice he is suffering").

13

Finally, Kurtz has demonstrated prejudice in the form of impairment to his defense. The effect delay has on a defendant's ability to mount a defense is the most serious of the interests protected by the right to a speedy trial, as the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *United States v. Ferreira*, 665 F.3d 701, 703 (6th Cir. 2011). Initially, it should be noted that Kurtz's pretrial detention during the course of these proceedings has undoubtedly prejudiced his ability to prepare and present a defense in this case. At a minimum, incarceration over the past seven (7) years has inhibited Kurtz's ability to gather evidence, contact witnesses, readily confer with counsel, and otherwise assist with his defense. *See Barker*, 407 U.S. at 532, 533 ("[I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense"); *Redd v. Sowders*, 809 F.3d 1266, 1272 (6th Cir. 1987) ("[A]ppellee was placed in a disadvantaged position in attempting to locate [favorable witnesses] to secure this testimony thirty-two months after his arrest . . . .[A]ppellee would have had a much better chance of locating the witnesses in 1981 than in 1983").

The prejudicial impact of the delay goes beyond mere speculation, however, as it is undisputed that crucial evidence is no longer available for trial in this case. Specifically, at least one (1) key witness – Sergeant Cornett – has passed away during the pendency of the case and is therefore unavailable to testify at trial. It is difficult to comprehend how the unavailability of the lead detective could be characterized as anything other than prejudicial. *See, e.g.*, *Barker*, 407 U.S. at 532 (noting that "[i]f witnesses die or disappear during a delay, the prejudice is obvious"). Likewise, it is conceivable that other witnesses' memories of significant facts or events may have been impaired, which further prejudices the defense's ability to effectively cross-examine the witnesses and/or probe the details of their recollection. *See, e.g., United States v. Graham*, 128F.3d

14

372, 376 (6th Cir. 1997) ("[T]o the extent that memories were impaired by time, the defense was clearly prejudiced by a lessened ability to probe the details of the witnesses' recollection").

One of the fundamental elements of a fair trial is the right of the accused to cross-examine the witnesses against him. *United States v. Gomez-Lemos*, 939 F.2d 326, 329 (6th Cir. 1991) (right of confrontation and cross-examination is an essential and fundamental requirement of a fair trial). Therefore, it is axiomatic that the death or unavailability of a witness, as well as the inability of defense witness to accurately recall the events at issue, prejudices the defense. *See Barker*, 407 U.S. at 532. Kurtz has established, *supra*, both presumptive and actual prejudice caused by the delay of the instant proceedings, either of which is sufficient to warrant the relief herein requested.

## **CONCLUSION**

The Supreme Court has previously recognized that the right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). The constitutional protection enhances the integrity of the fact-finding process by making it more likely that evidence and memories of witnesses will be readily available while simultaneously minimizing the infliction of anxiety upon the defendant caused by prolonged pretrial incarceration. *See United States v. Ewell*, 383 U.S. 116, 120 (1966). As the Sixth Circuit has previously recognized,

> [i]t is because the Sixth Amendment right to a speedy prosecution is so fundamental to our justice system, yet so difficult to define in a concrete manner, that it is incumbent upon our Court to zealously defend it. It is only by forcefully admonishing those that flout this right that the Court can define boundaries to guide litigants and courts, and prevent abuses of the right such as the case before us.

*United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997).

Here, it is undisputed that Kurtz has been incarcerated for over seven (7) years. During that time, he has asked to be released on bail on multiple occasions and filed two (2) separate

15

Motions to Dismiss for violations of his right to a speedy trial. When those Motions went unanswered and without any ruling from the Court, Kurtz was forced to undertake the extraordinary measure of filing a Petition for a Writ of Mandamus with the Sixth Circuit. Despite his repeated and earnest efforts, these Motions are still pending before the Court without any trial date currently scheduled – all while Kurtz continues to be detained on charges for which he is presumed innocent.

The important interests protected by the Speedy Trial Act are underscored by the substantial remedy to be imposed when its provisions are violated. If the constitutional guarantee to a speedy trial is to have continued significance, it must, at a minimum, mean that a defendant who does not himself avoid or delay the proceedings will not have to wait seven (7) years for a trial in which his only responsibility in causing any delay is his interest in receiving a fair trial with evidence that the Government is legally permitted to introduce against him. Even in the absence of bad faith, the underlying purpose and intent of the Speedy Trial Act would be rendered superfluous were this Court to sanction the type of delay at issue in this case, particularly when considering Kurtz's relative innocence in prolonging the litigation. After all, the right to a speedy trial is as much a societal right as it is an individual one. *See United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) ("The reason why a defendant cannot waive the time constraints of the Speedy Trial Act is that the public has as great an interest in a prompt criminal trial as has the defendant. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied'").

**WHEREFORE**, Defendant Nicholas Kurtz respectfully moves this Honorable Court to dismiss the Indictment with prejudice due to the violation of his Sixth Amendment right to a speedy trial.

Respectfully Submitted,

*/s/ Jon Paul Rion*
JON PAUL RION (0067020)
Rion, Rion and Rion, L.P.A. Inc.
130 West Second Street
Suite 2150
Dayton, Ohio 45402
(937) 223-9133
Info@rionlaw.com


Respectfully Submitted,

*/s/ Eric C. Nemecek*
ERIC C. NEMECEK (0083195)
Friedman & Nemecek, L.L. C.
160 East 9th Street
Suite 650
Cleveland, Ohio 44114
(216) 928-7700
ECN@fanlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply was filed this 9th day of September, 2022, by way of the Court's CM/ECF system, which will send a notification of said filing ("NEF") to the following:

>Christy Muncy
>Assistant United States Attorney
>Office of the United States Attorney

                      Respectfully submitted,

                      */S/* Eric C. Nemecek
                      ERIC C. NEMECEK
                      Co-Counsel for Defendant