# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:15-cr-107 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| NICHOLAS KURTZ, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING MOTIONS TO DISMISS
## UNDER THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT

This criminal case is before the Court on Defendant's motions to dismiss under the Speedy Trial Act (Docs. 64, 66) and the parties' responsive memoranda (Docs. 68, 69).

## I. BACKGROUND

On October 7, 2015, Defendant Nicholas Kurtz was charged by way of indictment with two counts of coercion and enticement, in violation of 18 U.S.C. § 2422(a) and (b) (Counts 1 and 2, respectively).  (Doc. 12).[1]

The Government alleges that, between September 2013 and January 2015, Defendant used various forms of online social media to communicate with underage female victims whom he would persuade, induce, entice, and coerce to engage in sexually explicit activities.  (Doc. 1-1).  The victims ranged from thirteen to seventeen years old and lived in different states.  (*Id.*)  In corresponding with the victims, the Government alleges that Defendant would pretend to be a minor and, at times, would assume an alias.

---

[1] Count 1 is punishable by a term of up to 20 years imprisonment, while Count 2 carries a mandatory minimum term of 10 years up to LIFE imprisonment.  *See* 18 U.S.C. § 2422(a), (b).

(*Id.*)  In truth, Defendant was an adult between the ages of nineteen to twenty-one years old.  (*Id.*)

In February 2016, Defendant filed his first motion to suppress in this case, in which Defendant sought the suppression of evidence as well as a hearing pursuant to *Franks v. Delaware*.  (Doc. 22).  Over the next several months, the parties sought numerous continuances of the motion to suppress briefing schedule and, in the interim, Defendant filed a supplemental motion to suppress (Doc. 30) and a second motion to suppress (Doc. 35).  Notably, each of Defendant's new filings added additional arguments, supplemented prior arguments, and generally convoluted the briefing.  In any event, on October 21, 2016, the Court held a hearing on the motions to suppress, during which the Court orally indicated its intent to deny the *Franks* hearing and also granted the parties an opportunity to await a hearing transcript and submit post-hearing briefs on the balance of the motions to suppress (*i.e.*, all but the *Franks* issue).  (Doc. 38).  The Court denied the *Franks* hearing by way of a written Order on November 18, 2016, and awaited full briefing on the suppression of evidence.  (Doc. 39).

On November 18 and December 5, 2016, the parties jointly moved for two-week extensions of the post-hearing suppression briefs, both of which motions the Court granted.  On December 19, 2016, the parties jointly requested, and the Court granted, a STAY of the motion to suppress briefing entirely, as the parties believed they could reach a pretrial resolution.  (Not. Order, Dec. 27, 2016).  The Court tolled time during the parties' plea negotiations.  (Not. Orders, Jan. 17 & Feb. 9, 2017).  The Court also received an email status report on March 2, 2017, asking for an additional continuance

and a status conference after March 27, 2017, which requests the Court granted, setting the case for a status conference on April 5, 2017.

During the status conference on April 5, 2017, the parties advised that their plea negotiations had reached an impasse and, additionally, that a new evidentiary issue had come to light, which issue could impact the outcome of the pending motions to suppress. (Min. Entry, Apr. 7, 2017). Accordingly, the parties agreed that Defendant would file yet another supplemental memorandum to the pending motions to suppress, this time relating to the new evidentiary issue, which new evidentiary issue the Court would address before resuming briefing on the remainder of the pending motions to suppress (*Id.*) The Court set a deadline of June 19, 2017, for Defendant's supplemental suppression memo (Not. Order, Apr. 19, 2017); however, at the parties' requests, that deadline was further extended until September 25, 2017, and time remained tolled. (Not. Orders, Jun. 14 & Aug. 24, 2017).

On September 25, 2017, in lieu of a supplemental memorandum, Defendant filed a motion to dismiss (Doc. 43), and the following day filed a supplemental memorandum containing exhibits in support of the motion to dismiss (Doc. 44). The Court received a reply brief on the motion to dismiss on November 10, 2017, at which point the motion could be set for hearing. (Doc. 47). Due to the nature of the hearing (which would require expert testimony), as well as the upcoming holidays, finalizing a time for such a hearing was initially challenging. Accordingly, on February 2, 2018, the Court set the case for a status conference, which conference was held on February 16, 2018. (Min. Entry, Feb. 16, 2018). During the conference, the parties asked that the Court set the

hearing no sooner than April or May 2018. (*Id.*) The Court offered dates for the hearing and instructed the parties to confer with their experts and then to report back to the Court with a date convenient for both sides and their witnesses. (*Id.*) After hearing from the parties, the Court set the hearing for May 3, 2018, and exhibit binders and witness lists were due no later than April 23, 2018. (Not. Order, Feb. 23, 2018).

On April 24, 2018, the Court reached out to defense counsel, as the Court had received neither exhibit binders nor a witness list for the upcoming hearing. At that time, the Court learned that defense counsel, Jon Paul Rion, had recently suffered a personal tragedy. Due the significance of defense counsel's personal circumstances, the Court offered to continue the evidentiary hearing. Initially, an associate attorney at Mr. Rion's office declined the offered continuance on Mr. Rion's behalf; however, the following day, defense counsel filed a motion seeking to continue the hearing, which motion the Court granted. (Doc. 48; Not. Order, Apr. 27, 2018).

The hearing on Defendant's motion to suppress proceeded on August 7, 2018. (Doc. 52). However, due to the length and complexity of the testimony, the hearing was continued in progress and ultimately concluded on August 9, 2018. (Doc. 53). At that time, defense counsel acknowledged that the remaining suppression motions were not yet briefed, and the Court and parties reaffirmed their agreement that the Court would conclude its consideration on the motion to dismiss before resuming briefing on the suppression motions. (*Id.*) No post-hearing briefs were anticipated on the motion to

dismiss; however, the Court ordered the preparation of transcripts before it could issue an opinion.  The hearing transcripts were filed on August 20, 2018.  (Docs. 52, 53).[2]

On September 18, 2019, Defendant filed yet another supplemental memorandum in support of his motion to suppress.  (Doc. 55).  As the Court had not ruled on the motion to dismiss or resumed the suppression briefing schedule, and as the supplemental memorandum did not incorporate the evidence received during the 2016 hearing, this supplemental memorandum did not constitute a post-hearing brief, but rather another layer of arguments in Defendant's suppression briefing.  The Court did not receive a response to the supplemental motion to suppress, nor did it anticipate receiving any such response yet given that suppression briefing was still stayed.

On September 24, 2019, Defendant filed a Rule 12 motion to dismiss the Indictment or, in the alternative, a motion for bill of particulars.  (Doc. 56).  The Court did not receive a response to this motion.

On March 6, 2020, Defendant filed a second motion for bond.[3]  The Court set the case for a status conference on June 17, 2020, at which time the Court orally denied the motion for bond and also reaffirmed that the suppression motions remained stayed.  (Min. Entry, Jun. 17, 2020).  However, the Court ordered briefing on Defendant's subsequently filed Rule 12 motion to dismiss.  (*Id.*)  After granting a further extension of time, the

---

[2] After receipt of the transcripts, the Court communicated with defense counsel's office in September and December 2018 regarding an issue with the electronic exhibits.  Thereafter, the Court received revised copies of the exhibits from the defense.

[3] Defendant's first motion for bond was filed on June 29, 2016 (Doc. 32), and denied orally on July 1, 2016 (Min. Entry & Not. Order, Jul. 1, 2016).

Court received briefs on the Rule 12 motion to dismiss in July and August 2020. (Docs. 60, 62).[4] However, the Court also received briefs relating to Defendant's September 2019 supplemental memorandum to the motion to suppress, although these responses still did not constitute post-hearing briefs on all the issues raised in Defendant's original suppression motions. (Docs. 61, 63).

On September 3, 2021, Defendant filed a motion to dismiss on speedy trial grounds. (Doc. 64). The Government filed a motion for extension of time to respond, but ultimately did not file the response, either by the date the response was due or the new filing date sought. (Doc. 65). Thereafter, Defendant filed a second motion to dismiss on speedy trial grounds on March 24, 2022. (Doc. 66). Again, the Court received no response. On August 25, 2022, Defendant filed a mandamus petition, and the Court responded by Ordering briefing on Defendant's speedy trial motions. The Court has now received responsive briefing and the motions are ripe for decision.

## II. STANDARD OF REVIEW

### A. Dismissal for Speedy Trial Act Violations

The Speedy Trial Act provides that, subject to periods of exclusion, the trial of a defendant who has pleaded not guilty to a charge brought in an information or indictment "shall commence within seventy days from the filing date (and making public) of the

---

[4] The Court notes that briefing on this motion occurred over the summer of 2020, during the first few months of the COVID-19 pandemic. Thus, the Court was holding in-person hearing on an emergency basis only. And there was no indication to the Court that a hearing in this case would need to be conducted on an emergency basis.

information or indictment, or from the date the defendant … [appears before] the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1), (h).

In the event that "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  Defendant carries the burden of proof as to the motion.  *Id*.

"[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner v. United States*, 547 U.S. 489, 499 (2006).  In determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(2).

## B.  Dismissal for Sixth Amendment Speedy Trial Violation

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …."  U.S. Const. amend. VI.

To determine whether a defendant has been denied his Sixth Amendment right to a speedy trial, the Court must consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertions of his right; and (4) prejudice to the defendant.  *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  In contrast to the remedies available for violation of

the Speedy Trial Act, "the proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice." *Id.* at 413.

## III.  ANALYSIS

Defendant seeks dismissal of the Indictment for violations of the Speedy Trial Act, arguing in his first motion that 386 non-excludable days have elapsed on the speedy trial clock (Doc. 64) and subsequently argues that an additional 200 days have elapsed and that dismissal should be with prejudice (Doc. 66).

Notably, however, Defendant's computation of time is flawed from the start for two reasons: first, Defendant assumes that time began to run as soon as the Rule 12 motion to dismiss was briefed, despite no hearing having yet occurred; and second, Defendant assumes the motions to suppress were ripe for decision as of August 7, 2020. (Doc. 64 at 24-25).

### A.  The Speedy Trial Act

The Speedy Trial Act requires that trial commence within seventy-days of either the filing of the indictment or a defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1).  However, the Act excludes certain periods of time from that seventy-day computation.  18 U.S.C. § 3161(h).

> Some of these delays are excludable only if the district court makes certain findings enumerated in the statute[, pursuant to 18 U.S.C.] § 3161(h)(7).  Other delays are automatically excludable, *i.e.,* they may be excluded without district court findings.  … [S]ubsection (h)(1) requires the automatic exclusion of 'any period of delay resulting from other proceedings concerning the defendant, including but not limited to' periods of delay resulting from [(h)(1)'s] eight enumerated subcategories of proceedings.

*Bloate v. United States*, 559 U.S. 196, 203 (2010).

### 1. *Rule 12 Motion to Dismiss or for Bill of Particulars*

Despite Defendant's contention, the fact that a hearing has not yet occurred on the Rule 12 motion to dismiss does not mean that time automatically begins to run. Specifically, 18 U.S.C. § 3161(h)(1)(D) provides for the automatic exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion…." Notably, "the phrase 'or other prompt disposition' … does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." *Henderson v. United States*, 476 U.S. 321, 329-30 (1986) (emphasis added). Further, "the filing of a pretrial motion falls within [(h)(1)'s automatic exclusion] provision irrespective of whether it actually causes, or is expected to cause, delay in starting a trial." *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011).[5]

Here, when the Rule 12 motion to dismiss was filed, the Court already had another motion to dismiss before it, as well as numerous piecemeal motions to suppress (which, despite being stayed, continued to be supplemented). Moreover, the Rule 12 motion was

---

[5] In *Tinklenberg*, the Supreme Court held that 18 U.S.C. § 3161(h)(1)(D)'s automatic exclusion applies to <u>any</u> pretrial motions, irrespective of whether the motion caused or was expected to cause actual delay of the trial. 563 U.S. at 650. The Supreme Court explained that its holding was consistent with virtually all lower courts and that the interpretation by "the lower courts about the meaning of a statute of great practical administrative importance in the daily working lives of busy trial judges is itself entitled to strong consideration[.]" *Id*. at 657. Moreover, the Supreme Court rejected the 'actual delay' approach, noting that such an "interpretation would make the subparagraph (D) exclusion significantly more difficult to administer. And in doing so, it would significantly hinder the Speedy Trial Act's efforts to secure fair and efficient criminal trial proceedings." *Id*. (citing H.R.Rep. No. 93–1508, p. 15 (1974) ("the Act seeks to achieve 'efficiency in the processing of cases which is commensurate with due process'")).

not even briefed until August 2020, after the Court ordered briefing following a status conference. By that time, the Court was disinclined to set any motion for a hearing in the early months of the COVID-19 pandemic unless the motion constituted an emergency, and the Court did not deem the newly briefed Rule 12 motion to be such an emergency. But the fact that the Rule 12 motion has not yet been set for a hearing does not undermine the Court's intent to hold such a hearing.[6]

In any event, the delay between the filing of a motion and a hearing on said motion is excludable under the Speedy Trial Act, and the Act "does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." *Henderson*, 476 U.S. at 329-30.

Thus, time remains tolled by the Rule 12 motion to dismiss.

### 2. *Motions to Suppress*

Defendant's second and more significant misconception is that the motions to suppress were ripe for decision in August 2020. Specifically, 18 U.S.C. § 3161(h)(1)(H) provides for the automatic exclusion of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." However, the Court "has a motion 'under advisement'

---

[6] The Court intended to hold oral arguments on Defendant's motion in order to hear further argument on Defendant's alternative request for a Bill of Particulars. Of notable interest to the Court was the question of whether a Bill of Particulars was needed as to Count 1 and the alleged interstate travel. This particular issue was not adequately addressed in the parties' briefs, and the Court does not have sufficient information before it to make a determination without receiving further arguments.

10

… from the time the court receives all the papers **it reasonably expects**[.]" *Henderson*, 476 U.S. at 329 (emphasis added).

Here, as previously noted, Defendant's motions to suppress raise numerous issues on which the parties intended to file post-hearing briefs.  However, the post-hearing briefing was subsequently STAYED, at the parties' request, pending the resolution of the original motion to dismiss.  And the basis for the Court granting such a stay was only amplified by the filing of the Rule 12 motion to dismiss (and of course the instant speedy trial motions).  The Court has never lifted that stay on the suppression motions, and the briefs received in response to Defendant's <u>third supplemental memorandum</u> in support of suppression <u>does not constitute post-hearing briefing on the original motions to suppress</u>. Indeed, the third supplemental memorandum, which was briefed over the summer of 2020, addresses only the validity of the warrant.  (Doc. 55).  However, Defendant's original motion to suppress also raised questions of a warrantless vehicular search, as well as a separate *Miranda* issue, none of which were addressed in the third supplemental memorandum.  (*Compare* Doc. 22 *with* Doc. 55).

The Court further notes that, not only did the Court not interpret Defendant's third supplemental memorandum as a post-hearing brief, but it does not appear that Defendant ever intended it to be a post-hearing brief.  To start, the Court had not lifted the stay on post-hearing briefs when Defendant filed the supplemental memorandum.  (Doc. 55). Nevertheless, the brief was not only filed, but it was captioned and presented as "supplemental" to the motion to suppress, indicating that it was intended to add to the legal argument, not to incorporate the testimony from the evidentiary hearing.  (Doc. 55).

11

And, indeed, the supplemental memorandum does just that—it supplements the legal arguments regarding the validity of the warrant (one of the three arguments raised in the motion to suppress), but it does not discuss the evidence proffered during the evidentiary hearing, nor does it address the remaining arguments in the suppression motion. Moreover, after the Government responded to the supplemental memorandum, Defendant filed a reply. Such briefing was never intended for purposes of the post-hearing briefs. Rather, before the stay was imposed, the Court had ordered post-hearing briefs to be submitted contemporaneously, and the Court has since given no indication that it intended to change that briefing schedule once the stay was lifted. The fact that Defendant filed the brief of his own volition, during the stay, and then further **<u>filed a reply</u>** when the Government filed its responsive brief, indicates that Defendant saw his own filing as an independent motion, but of course labeling is a "supplement" in recognition of the fact that the argument had already been raised in a separate filing.

In short, the Court rejects the notion that Defendant's third supplemental memorandum, to a STAYED motion, somehow independently serves to lift the stay that the Court imposed, despite the fact that the Court never ordered the stay to be lifted. The Court further rejects the notion that Defendant's third supplemental memorandum should be retroactively construed as a post-hearing brief, despite the fact that it is clearly not a post-hearing brief and does not even attempt to pass itself off as one.

Because the Court has not yet received post-hearing briefs on Defendant's motion to suppress, and because such briefing is still STAYED, Defendant's motion to suppress is not ripe for decision and continues to toll time. Thus, no time has elapsed since the

12

filing of the motion to suppress in 2016, and no violation of the Speedy Trial Act has occurred.

**B. Sixth Amendment Right to a Speedy Trial**

Defendant further moves for dismissal with prejudice, arguing that he has been denied a speedy trial under the Sixth Amendment. (Doc. 64, 66).[7]

To determine whether Defendant has been deprived of his Sixth Amendment right to a speedy trial, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. *Barker*, 407 U.S. at 530. No one factor is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial … [but] [r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

As to the **first** factor, the length of the delay serves as a "triggering mechanism" and, if the length is not "presumptively prejudicial," the Court is not required to undertake the remainder of *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530–31. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. The Sixth Circuit has held "delays over one year are 'uncommonly long.'" *United States v. Baugh*, 605 F. App'x 488, 491 (6th Cir. 2015) (citing *United States v. Bass*, 460 F.3d

---

[7] Notably, although Defendant invokes the Sixth Amendment in passing, his motions do not address a violation of the Sixth Amendment under the *Barker* factors. It was not until the Government invoked *Barker* and undertook that analysis unilaterally in its response (Doc. 68) that Defendant made any mention of the factors, for the first time, in his reply brief (Doc. 69).

830, 836 (6th Cir. 2006)).  However, "in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to [Defendant's] constitutional claim."  *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).

Here, while Defendant accurately notes that he has been detained since 2015, the majority of that time is unquestionably attributable to Defendant himself and was exasperated by the numerous continuances and the piecemeal filings that have trickled in throughout this case.  This is not to say that Defendant sought continuances needlessly, but that time needed to brief his motions, to schedule hearings, and to engage in plea negotiations, is still attributable to him.  Nevertheless, for the sake of the record, the Court will undertake the remainder of the *Barker* analysis.

Specifically, the **second** factor under *Barker* questions the reason for the delay. The United States Supreme Court has made clear that "different weights are to be assigned to different reasons for delay."  *Doggett*, 505 U.S. at 657.  At its core, this factor seeks to determine "whether the government or the criminal defendant is more to blame for th[e] delay."  *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Doggett*, 505 U.S. at 651).

As the Supreme Court explained in *Barker*:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. Naturally, "delay caused by the defense weighs against the defendant," which includes delay attributable to defense counsel. *Brillon*, 556 U.S. at 90-91 (citing *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

As already noted, *supra*, the Court and the parties have worked continuously in this case from the commencement of the case through August 2020. And that time is entirely attributable to Defendant's litigation of this case. It is only after August 2020, until the first speedy trial motion was filed in September 2021, that progress in the case slowed. But that slowed progression makes up a smaller portion of the time that has elapsed in this case, and it is not attributable to the Government. The Court made the reasoned decision not to set an emergency hearing on Defendant's standard Rule 12 motion, and has yet to do so due to its own calendar. That reason is factors into the analysis, but is "more neutral reason … [and] should be weighted less heavily…." *Barker*, 407 U.S. at 531. Indeed, even Defendant acknowledges that such a delay was "unintentional." (Doc. 64 at 38). Thus, this factor weighs generally neutral in the analysis.

The **third** factor is Defendant's assertion of his right. "Whether and how a defendant asserts his right is closely related to the other factors," in that "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. Stated simply, "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id*. Thus, the

15

Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

Here, Defendant's only assertion of his right to a speedy trial arises from the filing of his motions to dismiss. Indeed, quite the contrary to asserting his right to a speedy trial, Defendant had sought numerous continuances and extensions of time. Moreover, by Defendant's calculation (which this Court has explained is in error), the speedy trial clock would have run in October 2020. Nevertheless, Defendant waited nearly a year to file a motion to dismiss.

Accordingly, in considering the facts and circumstances of this case, the Court finds that the third factor weighs against Defendant.

Finally, the **fourth** factor is any resulting prejudice to Defendant. In *Barker*, the Supreme Court explained that:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect … [including]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

Notably, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. The Sixth Circuit has elaborated, however, that "[i]n this circuit, '[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with*

*specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000)) (emphasis in original); *see also United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (noting that, in the absence of particularized trial prejudice, "[s]horter delays [(*e.g.*, thirteen and one-half months versus six-years)] attributable to the government's negligence have been held not to give rise to a presumption of prejudice").

Here, Defendant argues that he has suffered both trial and non-trial prejudice. Specifically, Defendant asserts non-trial prejudice arising from his continued incarceration. Pretrial detention is a significant deprivation to any defendant. The Court agrees the delay has contributed to Defendant's non-trial prejudice.

Defendant further argues, however, that he has suffered trial prejudice, asserting that a key witness—Sergeant Larry Cornett—has since passed away. While the Court acknowledges the sudden and unfortunate passing of Sergeant Cornett, it bears noting that he died in June 2018.[8] In other words, Sgt. Cornett passed away even before the hearing on Defendant's first motion to dismiss. Thus, there is no merit to the notion that Sgt. Cornett's death evidences trial prejudice arising from delay in this case.

Accordingly, Defendant's allegations of trial prejudice are entirely without merit. And as non-trial prejudice carries less weight than trial prejudice, the Court deems this fourth factor as weighing neither in favor of nor against either party.

---

[8] *See* Warren County Police Officer Dies at Age of 43, Dayton Daily News, available at https://www.daytondailynews.com/news/local-obituaries/warren-county-police-officer-dies-age/7mp80MrpV8MXY5DaFb1muK/

Having considered each of the *Barker* factors, the Court finds the delay has not deprived Defendant of his constitutional right to a speedy trial. Accordingly, dismissal under the Sixth Amendment is not warranted.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motions to dismiss under the Speedy Trial Act (Docs. 64, 66) are **DENIED**.[9]

**IT IS SO ORDERED.**

Date:  9/14/2022                                                    *s/ Timothy S. Black*
                                                                          Timothy S. Black
                                                                          United States District Judge

---

[9] The Court will issue an Order on Defendant's first motion to dismiss relating to the audio recording (Doc. 43), and will then contact the parties to set oral arguments on Defendant's Rule 12 motion to dismiss. Time remains tolled by Defendant's pending motions to suppress.